# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| IN RE AXSOME THERAPEUTICS, INC. STOCKHOLDER DERIVATIVE LITIGATION | CONSOLIDATED C.A. No. 2025-1076-LWW |

## OPINION

Date Submitted: June 22, 2026
Date Decided: July 9, 2026

Seth D. Rigrodsky, Gina M. Serra & Herbert Mondros, RIGRODSKY LAW, P.A., Wilmington, Delaware; Justin A. Kuehn & Molly J. Brown, KUEHN LAW, PLLC, Southampton, New York, *Attorneys for Plaintiffs John A. Wickstrom and John Gildea*

Jody C. Barillare, Brian Loughnane & Amy. M. Dudash, MORGAN, LEWIS & BOCKIUS LLP, Wilmington, Delaware; Michael Blanchard, MORGAN, LEWIS & BOCKIUS LLP, Boston, Massachusetts; Christopher M. Wasil, MORGAN, LEWIS & BOCKIUS LLP, Hartford, Connecticut; *Attorneys for Defendants Herriot Tabuteau, Nick Pizzie, Mark Jacobson, Cedric O'Gorman, Kevin Laliberte, Mark Coleman, Roger Jeffs, and Mark Saad, and Nominal Defendant Axsome Therapeutics, Inc.*

**WILL, Vice Chancellor**

A statute of limitations provides a crucial endpoint to litigation exposure. In equity, this court applies the statute by analogy through the doctrine of laches. Equity aids the vigilant.

The plaintiffs in this derivative action slept on their rights. They acknowledge that they were on inquiry notice of their claims by April 2022, when Axsome Therapeutics, Inc. disclosed regulatory setbacks for its leading drug candidate. While parallel securities and derivative litigation proceeded in federal court, the plaintiffs here did nothing.

Only as the end of the three-year limitations period loomed did the plaintiffs send demands to inspect the company's records. They now argue that the mere transmission of these demands paused the clock. Their position fails on the law and the facts.

A diligently pursued books and records suit may, in appropriate circumstances, justify equitable tolling. But an eleventh-hour, out-of-court demand pursued with little zeal does not. Because the plaintiffs failed to timely assert their claims, prejudice to the defendants is presumed. No extraordinary circumstances rebut that presumption.

The complaint is dismissed.

## I.  FACTUAL BACKGROUND

The following facts are drawn from the Verified Stockholder Derivative Complaint (the "Complaint") and the documents it incorporates by reference.[1]

### A.  Axsome and AXS-07

Nominal defendant Axsome Therapeutics, Inc. is a biopharmaceutical company focused on developing innovative therapies for central nervous system disorders.[2]  One of Axsome's product candidates is AXS-07, an investigational treatment for migraines.[3]

In December 2019, Axsome issued a press release announcing positive results from AXS-07's Phase 3 trial and estimating that it would file a New Drug Application (NDA) with the U.S. Food and Drug Administration (FDA) in the second half of 2020.[4]  The company issued similar statements over the next seven months—in press releases, conference calls, and Securities and Exchange

---

[1] Verified S'holder Deriv. Compl. (Dkt. 1) ("Compl."); *see also In re Lukens Inc. S'holders Litig.*, 757 A.2d 720, 727 (Del. Ch. 1999) (explaining that, in deciding a motion to dismiss, "the court may consider, for certain purposes, the content of documents that are integral to or are incorporated by reference into the complaint," such as "the actual disclosures made" in the corporation's public filings), *aff'd sub nom. Walker v. Lukens, Inc.*, 757 A.2d 1278 (Del. 2000).  Exhibits to the defendants' opening and reply briefs are cited as "Defs.' Ex. __."  Dkts. 12, 19.  Exhibits to the plaintiffs' opposition brief are cited as "Pls.' Ex. __." Dkt. 16.

[2] Compl. ¶ 2.

[3] *Id.*

[4] *Id.* ¶ 138.

Commission (SEC) filings—some of which specified an NDA filing date in the fourth quarter of 2020.[5]  Certain disclosures also addressed matters related to AXS-07's chemistry, manufacturing, and control (CMC).[6]  According to the Complaint, these public statements were materially false or misleading because they omitted purported CMC deficiencies that made Axsome's estimated NDA filing date "unlikely" and exaggerated AXS-07's regulatory and commercial prospects.[7]

In November 2020, Axsome delayed its estimated NDA filing date to the first quarter of 2021—a change disclosed in a press release and investor conference call.[8] In March 2021, Axsome announced a further delay to the second quarter of 2021, which it reiterated in May 2021.[9]  The plaintiffs allege that these statements also omitted purported CMC issues negatively affecting the AXS-07 NDA.[10]

Axsome ultimately submitted the NDA in June 2021.[11]  In August 2021, Axsome issued a press release announcing that it had filed the AXS-07 NDA in the second quarter of 2021.[12]  It acknowledged that the FDA had identified deficiencies

---

[5] *Id.* ¶¶ 140-50.

[6] *Id.* ¶¶ 142, 146-47.

[7] *Id.* ¶ 151.

[8] *Id.* ¶¶ 153-60.

[9] *Id.* ¶¶ 161-67.

[10] *Id.* ¶ 154.

[11] *Id.* ¶ 81.

[12] *Id.* ¶ 168.

in a separate NDA for a different product, AXS-05.[13]  The next month, Axsome announced that the FDA had accepted the AXS-07 NDA and set a "[Prescription Drug User Fee Act (PDUFA)] target action date of April 30, 2022."[14]  Six months later, in March 2022, Axsome announced that the FDA expected to complete its facility inspection before the PDUFA date.[15]  According to the plaintiffs, these statements were false or misleading because they overstated AXS-07's regulatory and commercial prospects and omitted purported CMC deficiencies that made FDA approval of the NDA "unlikely."[16]

## B.    The Stock Drop

On April 25, 2022, Axsome filed a Form 8-K with the SEC disclosing that, three days earlier, the FDA notified it of unresolved CMC issues identified during its review of the AXS-07 NDA.[17]  Axsome stated that it expected to receive a letter from the FDA by the end of the month declining to approve the NDA in its current form.[18]

---

[13] *Id.* ¶¶ 168-69.

[14] *Id.* ¶ 173.  A Prescription Drug User Fee Act (PDUFA) target action date is the date by which the FDA intends to issue a decision regarding an NDA.  *See* Keith Speights, *What Is a PDUFA Date?*, The Motley Fool (July 3, 2025), https://www.fool.com/terms/p/pdufa-date/.

[15] Compl. ¶ 180.

[16] *Id.* ¶ 183.

[17] *Id.* ¶ 185.

[18] *Id.*

On this news, Axsome's stock price fell by $8.60 per share.[19]

## C.    The Federal Actions

In May 2022, an Axsome stockholder filed a putative class action complaint in the United States District Court for the Southern District of New York (the "Securities Action") against Axsome and certain of its officers.[20]  The plaintiff claimed that the defendants violated the Securities Exchange Act of 1934 by making false and misleading statements about the status and prospects of the AXS-07 NDA and by failing to disclose purported CMC deficiencies that made FDA approval unlikely.[21]

In September 2023, the court dismissed the initial complaint.[22]  The plaintiff filed an amended complaint.  In March 2025, the court granted a motion to dismiss the amended complaint as to certain officers but denied it as to Axsome, its Chief

---

[19] *Id.* ¶ 186.

[20] *See* Compl., *In re Axsome Therapeutics, Inc. Sec. Litig.*, No. 1:22-cv-03925 (S.D.N.Y. May 13, 2022); *cf. In re Career Educ. Corp. Deriv. Litig.*, 2007 WL 2875203, at *9 (Del. Ch. Sept. 28, 2007) ("[T]he court also may take judicial notice of publicly filed documents, such as documents publicly filed in litigation pending in other jurisdictions." (citation omitted)).

[21] *See* Compl. ¶¶ 1, 3-4, *In re Axsome Therapeutics, Inc. Sec. Litig.*, No. 1:22-cv-03925 (S.D.N.Y. May 13, 2022).

[22] *See Gru v. Axsome Therapeutics, Inc.*, 2023 WL 6214581, at *6 (S.D.N.Y. Sept. 25, 2023).

6

Executive Officer, and its Chief Operating Officer.[23]  The parties later reached a settlement, which the court approved in February 2026.[24]

Two other Axsome stockholders filed derivative complaints in the Southern District of New York in July 2022 and January 2023.[25]  In February 2023, the court consolidated these suits (the "Federal Derivative Action") and stayed the litigation pending the resolution of the Securities Action.[26]  After the Securities Action settled, the stay was lifted.  In February 2026, the defendants moved to dismiss the Federal Derivative Action on both jurisdictional and merits-based grounds.[27]  The federal court ordered the plaintiffs to explain their "good-faith basis to argue that the federal claim in th[eir] [c]omplaint is not moot, and that, in the event the federal claim is dismissed, the applicable [Delaware] forum selection clause would not compel dismissal of the state law claim."[28]

---

[23] *See In re Axsome Therapeutics, Inc. Sec. Litig.*, 2025 WL 965265, at *11 (S.D.N.Y. Mar. 31, 2025).

[24] *In re Axsome Therapeutics, Inc. Sec. Litig.*, 2026 WL 538412 (S.D.N.Y. Feb. 26, 2026) (ORDER).

[25] *See* Order Consolidating Actions, *In re Axsome Therapeutics, Inc. S'holder Deriv. Litig.*, No. 1:22-cv-06183 (S.D.N.Y. Feb. 28, 2023).

[26] *See id.*; *see also* Order to Temporarily Stay Action, *In re Axsome Therapeutics, Inc. S'holder Deriv. Litig.*, No. 1:22-cv-06183 (S.D.N.Y. Apr. 29, 2025).

[27] *See* Mem. of Law in Supp. of Mot. to Dismiss, *In re Axsome Therapeutics, Inc. S'holder Deriv. Litig.*, No. 1:22-cv-06183 (S.D.N.Y. Feb. 13, 2026).

[28] Order, *In re Axsome Therapeutics, Inc. S'holder Deriv. Litig.*, No. 1:22-cv-06183 (S.D.N.Y. Feb. 24, 2026).

### D. The Section 220 Demands and Delaware Litigation

Meanwhile, on April 24, 2025, counsel for plaintiff John Wickstrom—an Axsome stockholder—emailed a purported demand for books and records to Axsome.[29]  On May 2, plaintiff John Gildea—another Axsome stockholder—served a books and records demand on Axsome by hand delivery to its registered agent and FedEx to its headquarters.[30]  On May 14, Wickstrom's counsel emailed a copy of the demand to Axsome's outside counsel, explaining that he had "emailed [the demand] to investor relations but ha[d] not heard back" and asking that the demand be "forward[ed]" to Axsome.[31]  Axsome produced documents to Wickstrom and Gildea on September 16.[32]

On September 23, 2025, Wickstrom filed a derivative complaint in this court.[33]  Gildea followed suit six days later.[34]  On November 6, I granted the parties' stipulation to consolidate the actions and appoint co-lead counsel.[35]

---

[29] Pls.' Ex. A (letter from J. Kuehn demanding Axsome books and records, emailed to H. Tabuteau).

[30] Defs.' Ex. DD.

[31] Defs.' Ex. EE.

[32] *See* Defs.' Ex. FF.

[33] Dkt. 1.

[34] Compl., C.A. No. 2025-1103-LWW (Del. Ch. Sept. 29, 2025).

[35] Dkt. 6.  Wickstrom's Complaint was deemed operative.

On February 2, 2026, Axsome and the individual defendants moved to dismiss the Complaint.[36] The plaintiffs filed an answering brief opposing the motion on March 26.[37] The defendants filed a reply brief on April 27.[38] I heard oral argument on June 22 and took the motion under advisement.[39]

## II.  ANALYSIS

The defendants have moved to dismiss the Complaint under Court of Chancery Rule 23.1 for failure to plead demand excusal and under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. The plaintiffs have not pleaded a timely claim; the motion is granted under Rule 12(b)(6). I need not reach the defendants' Rule 23.1 arguments.

In resolving the motion, I must "(1) accept all well pleaded factual allegations as true, (2) accept even vague allegations as 'well pleaded' if they give the opposing party notice of the claim, [and] (3) draw all reasonable inferences in favor of the non-moving party."[40] I need not "accept conclusory allegations unsupported by

---

[36] Defs.' and Nominal Def.'s Opening Br. in Supp. of Mot. to Dismiss Pls.' Verified S'holder Deriv. Compl. (Dkt. 12) ("Defs.' Opening Br.").

[37] Pls.' Br. in Opp'n to Defs.' and Nominal Def.'s Mot. to Dismiss Pls.' Verified S'holder Deriv. Compl. (Dkt. 16) ("Pls.' Answering Br.").

[38] Defs.' and Nominal Def.'s Reply Br. in Supp. of Mot. to Dismiss Pls.' Verified S'holder Deriv. Compl. (Dkt. 19) ("Defs.' Reply Br.").

[39] Dkt. 28.

[40] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 535 (Del. 2011) (citing *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896-97 (Del. 2002)).

specific facts or [] draw unreasonable inferences in favor of the non-moving party."[41]

Dismissal is appropriate only if the non-moving party cannot recover "under any reasonably conceivable set of circumstances susceptible of proof."[42]

The defendants argue that the plaintiffs' claims are barred by the doctrine of laches.[43] "Laches is an affirmative defense that the plaintiff unreasonably delayed in bringing suit after the plaintiff knew of an infringement of his rights, thereby resulting in material prejudice to the defendant."[44] Generally, "the burden to prove the elements of laches—both delay and prejudice to defendants—rests upon the defendants."[45] But where a claim is brought after the analogous statute of limitations expires, the court will presumptively bar that action.[46] The suit will be dismissed as untimely "absent tolling or unusual circumstances that would make it inequitable to do so."[47]

---

[41] *Price v. E.I. DuPont de Nemours & Co.*, 26 A.3d 162, 166 (Del. 2011), *overruled in part on other grounds by Ramsey v. Ga. S. Univ. Advanced Dev. Ctr.*, 189 A.3d 1255 (Del. 2018).

[42] *Savor*, 812 A.2d at 897 (citation omitted).

[43] *See* Defs.' Opening Br. 13-16; Defs.' Reply Br. 2-13.

[44] *U.S. Cellular Inv. Co. of Allentown v. Bell Atl. Mobile Sys., Inc.*, 677 A.2d 497, 502 (Del. 1996).

[45] *Hudak v. Procek*, 806 A.2d 140, 154 (Del. 2002).

[46] *See Kraft v. WisdomTree Invs., Inc.*, 145 A.3d 969, 978-79 (Del. Ch. 2016) (explaining that the court affords the analogous statute of limitations "great weight" in resolving whether equitable claims are barred by laches and will "presumptively bar" a claim filed after the limitations period expires (citation omitted)).

[47] *Kraft*, 145 A.3d at 979.

### A. Timeliness

The plaintiffs contend that the defendants breached their fiduciary duties by causing Axsome to "disseminate materially false and misleading statements concerning the Company's business, operations, and prospects."[48] They highlight 29 public statements by Axsome and various corporate officers from December 30, 2019 to April 22, 2022.[49] Their claims accrued at the moment of the alleged "wrongful act"—here, the dissemination of the challenged statements.[50] The plaintiffs' related unjust enrichment and waste claims likewise accrued when the allegedly misleading disclosures were disseminated.[51] Thus, the plaintiffs' claims accrued by April 22, 2022 at the latest.

---

[48] Compl. ¶ 4.

[49] *See id.* ¶¶ 138-82.

[50] *Reilly v. Horn*, 2025 WL 2781735, at *4 (Del. Ch. Sept. 30, 2025) (holding that a breach of fiduciary duty claim "accrues at the moment of the wrongful act," which, in the context of disclosure-based claims, causes an "immediate informational injury" upon the dissemination of the statement), *aff'd*, 2026 WL 1256598 (Del. May 7, 2026) (TABLE); *see Deane v. Maginn*, 2022 WL 624415, at *6 (Del. Ch. Mar. 2, 2022) ("Absent tolling, the limitations period 'begins to run from the time of the [allegedly] wrongful act, without regard for whether the plaintiff became aware of the wrongdoing at that time.'" (citation omitted)); *see also Sutherland v. Sutherland*, 2010 WL 1838968, at *8 (Del. Ch. May 3, 2010) ("A claim for breach of fiduciary duty accrues at the time of the wrongful act." (citing *Wal-Mart Stores, Inc. v. AIG Life Ins.*, 860 A.2d 312, 319 (Del. 2004))).

[51] *See* Compl. ¶ 225 (alleging unjust enrichment due to the defendants' "wrongful acts, violations of law, and false and misleading statements and omissions of material information"); *id.* ¶ 231 (alleging waste "[a]s a result of the foregoing" breaches of fiduciary duty); *Reilly*, 2026 WL 1256598, at *1 ("The unjust enrichment claim is also barred by laches. Like the breach of fiduciary duty claim, the unjust enrichment claim accrued when the allegedly misleading proxy statement was disseminated to stockholders."); *see also Witmer v. Armistice Cap., LLC*, 344 A.3d 632, 662 (Del. Ch. 2025)

A three-year statute of limitations applies by analogy to breach of fiduciary duty, unjust enrichment, and waste claims.[52] To bring timely claims, the plaintiffs were required to sue no later than April 22, 2025. Yet Wickstrom waited over five months, filing the Complaint on September 23, 2025.[53] The Complaint is presumptively untimely.

The plaintiffs rely on their books and records demands to salvage their time-barred claims. Specifically, they assert that the statute of limitations was "tolled from the time" Wickstrom first attempted to send Axsome a Section 220 demand "until [the] filing" of this suit.[54] This argument fails on the law and the facts.[55]

---

(explaining that "duplicative" breach of fiduciary duty and unjust enrichment claims are treated "in the same manner when resolving a motion to dismiss"), *aff'd*, 2026 WL 849994 (Del. Mar. 27, 2026) (TABLE).

[52] *See* 10 *Del. C.* § 8106(a); *see also In re Dean Witter P'ship Litig.*, 1998 WL 442456, at *4 (Del. Ch. July 17, 1998) ("It is well-settled under Delaware law that a three-year statute of limitations applies to claims for breach of fiduciary duty."), *aff'd*, 725 A.2d 441 (Del. 1999) (TABLE); *Vichi v. Koninklijke Philips Elecs. N.V.*, 62 A.3d 26, 41-42 (Del. Ch. 2012) (explaining that, when addressing a laches defense for an unjust enrichment claim, the court looks to the three-year limitations period in 10 *Del. C.* § 8106 by analogy); *Weiss v. Swanson*, 948 A.2d 433, 450-51 (Del. Ch. 2008) (considering the three-year statute of limitations in Section 8106 as applied to waste, unjust enrichment, and breach of fiduciary duty claims).

[53] *See supra* note 33 and accompanying text.

[54] Pls.' Answering Br. 19.

[55] The plaintiffs assert that the defendants waived their untimeliness defense by failing to raise it in response to the Section 220 demands. *See id.* at 22. A company is not, however, required to preemptively assert merits-based affirmative defenses, such as laches, to preserve them when responding to a books and records demand. *Cf. AmerisourceBergen Corp. v. Lebanon Cnty. Empls.' Ret. Fund*, 243 A.3d 417, 431-32 (Del. 2020) (holding that companies cannot defeat a Section 220 demand by prematurely arguing the merits of a future plenary lawsuit).

First, tolling pauses the running of a statute of limitations after accrual until a plaintiff is placed on inquiry notice, which occurred no later than April 22, 2025. And second, even if the service of a Section 220 demand paused the clock, neither plaintiff validly served a demand before the limitations period expired.

### 1.    Inquiry Notice

"[A]fter a cause of action accrues, the 'running' of the limitations period can be 'tolled' in certain limited circumstances."[56]   But tolling is not an unlimited reprieve.  The limitations period is tolled only until a plaintiff is "objectively aware of the facts giving rise to the [alleged] wrong, i.e., on inquiry notice."[57]

Even if tolling applied, it ended by April 25, 2022 when the plaintiffs concede they were on inquiry notice.[58]  According to the Complaint, the "[t]ruth [e]merge[d]" when Axsome filed a Form 8-K disclosing the issues with the AXS-07 NDA and anticipated CRL, precipitating a drop in Axsome's stock price.[59]  The plaintiffs did not file their lawsuits for over three years.[60]  This action therefore falls well outside the limitations period and is presumptively time-barred.

---

[56] *Wal-Mart*, 860 A.2d at 319 (citation omitted).

[57] *In re Am. Int'l Gp., Inc.*, 965 A.2d 763, 812 (Del. Ch. 2009), *aff'd sub nom. Teachers' Ret. Sys. of La. v. PricewaterhouseCoopers LLP*, 11 A.3d 228 (Del. 2011) (TABLE).

[58] There is a strong argument that the plaintiffs were on inquiry notice much earlier.  I consider the date the plaintiffs concede they learned of the "truth" because their claims remain untimely even under this generous assumption.

[59] Compl. ¶¶ 185-86.

[60] *See supra* notes 33-34 and accompanying text.

## 2. Equitable Tolling

The plaintiffs insist their Complaint is timely due to the service of their Section 220 demands. They argue that the mere transmission of a demand suspends the statute of limitations until a plenary suit is filed.[61] This argument is doctrinally unsound.

The Court of Chancery has at times exercised its equitable discretion to toll the statute of limitations during a books and records investigation. On those occasions, the court historically treated the initiation of a Section 220 lawsuit—not the out-of-court service of a demand—as the relevant event for tolling purposes. For example, in *Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*, the court noted that a plaintiff could overcome a laches defense by showing "that it asserted its rights in a timely manner by making demand *and* filing [a Section 220] action."[62] Similarly, in *Technicorp International II, Inc. v. Johnston*, the court explained that "the institution of other litigation to ascertain the facts involved in the later suit will toll the statute of limitations while that litigation proceeds."[63] And in *Sutherland v.*

---

[61] *See* Pls.' Answering Br. 19.

[62] 714 A.2d 96, 105 (Del. Ch. 1998) (emphasis added).

[63] 2000 WL 713750, at *9 (Del. Ch. May 31, 2000) ("[W]hat little delay there was, is explained by the pendency of the other litigation of a character which, when considered, shows that the complainant was diligently seeking a legal determination upon a question precisely similar to the one in controversy here." (quoting *Cahall v. Burbage*, 119 A. 574, 576-77 (Del. Ch. 1922))).

*Sutherland*, the court observed that because a plaintiff "sought to develop her claims . . . through her [Section] 220 action, tolling pending her books and records action [wa]s appropriate."[64]

More recently, in *Firemen's Retirement System of St. Louis v. Sorenson*, this court rejected an argument that "the statute of limitations was tolled while the plaintiff pursued an inspection demand."[65]  In doing so, it noted the absence of "any authority" holding "that service of a books and records demand alone tolls the statute of limitations for a subsequent plenary lawsuit."[66]  The court also contrasted the minimal burden of serving a demand, which has "no formal schedule" and might contravene "basic statutory requirements," with the rigors of filing a Section 220 lawsuit—"a summary proceeding with 'expedited discovery and a prompt hearing.'"[67]  As such, *Sorenson* followed then-Vice Chancellor Steele's observation

---

[64] 2013 WL 2362263, at *15 n.70 (Del. Ch. May 30, 2013); *see also Orloff v. Shulman*, 2005 WL 3272355, at *10 (Del. Ch. Nov. 23, 2005) (tolling the statute of limitations where the plaintiffs "could not have brought [their] claims without the information gathered during [a] Section 220 action").

[65] 2021 WL 4593777, at *10 (Del. Ch. Oct. 5, 2021).

[66] *Id.*

[67] *Id.* at *11; *cf. Norman v. Elkin*, 860 F.3d 111, 124 (3d Cir. 2017) (tracing the Delaware line of cases "toll[ing] the limitations period for claims of fiduciary malfeasance while a § 220 action is pending" as consistent with Delaware's "intent to encourage § 220 actions as a way to allow stockholders to resolve disputes with the aid of a streamlined books and records proceeding" (citing *Cal. State Teachers' Ret. Sys. v. Alvarez*, 175 A.3d 86, 2017 WL 6421389, at *3 (Del. 2017) (TABLE))).

15

in *Gotham* that a Section 220 action "presents 'strong evidence that [a] plaintiff was aggressively asserting its claims.'"[68]

Seeking to sidestep this precedent, the plaintiffs rely on *Lebanon County Employees' Retirement Fund v. Collis*, which broadened the traditional approach on policy grounds.[69] In *Collis*, the court reasoned that conditioning tolling on the filing of a Section 220 enforcement action would perversely "incentivize the filing of more enforcement actions (which the court does not need), simply to secure a tolling benefit."[70] To avoid such unintended consequences, the court wrote that a stockholder "should receive credit for serving a demand and obtaining books and records without the need for an enforcement action."[71]

But *Collis* did not create a categorical rule that service of a Section 220 demand supports tolling.[72] Nor should one be. If a company promptly complies with a demand, the stockholder receives books and records with sufficient time to

---

[68] 2021 WL 4593777, at *11 (quoting *Gotham*, 714 A.2d at 105); *see also Deane*, 2022 WL 624415, at *6-7 (noting that "a books and records action may toll the statute of limitations where it presents 'strong evidence that [a] plaintiff was aggressively asserting its claims'" and calculating the tolling period from the date the books and records complaint was filed).

[69] 287 A.3d 1160 (Del. Ch. 2022). The plaintiffs also cite *Ontario Provincial Council of Carpenters' Pension Tr. Fund v. Walton*, which relies only on *Collis* for authority. 294 A.3d 65 (Del. Ch. 2023).

[70] *Collis*, 287 A.3d at 1211.

[71] *Id.*

[72] *Id.* (explaining that to earn the benefit of tolling, a "stockholder plaintiff must pursue the demand diligently" and "[t]he process should move forward with deliberate speed").

16

investigate and file a plenary suit before the limitations period expires, making tolling moot. If, by contrast, the company refuses the demand or engages in dilatory tactics, Section 220 provides a remedy: a summary proceeding in this court. A diligent plaintiff faced with stonewalling will sue to enforce its inspection rights.

Untethering tolling from the filing of a Section 220 lawsuit also invites uncertainty. If merely transmitting a demand letter pauses the statute of limitations, must the demand satisfy Section 220's strict requirements to earn the benefit?[73] And if so, must the court retrospectively adjudicate whether a defective demand nonetheless supports tolling?

The plaintiffs here seek to push *Collis* to this extreme.[74] They accept that Gildea's demand was served after the three-year statute of limitations expired. As for Wickstrom's demand, they insist that counsel's attempt to email the demand to Axsome's investor relations days before the limitations period lapsed supports tolling.[75] Indeed, counsel waited three weeks after emailing Axsome to ask its

---

[73] *See Sorenson*, 2021 WL 4593777, at \*11 (considering this risk).

[74] *See* Tr. of June 22, 2026 Oral Arg. on Defs.' Mot. to Dismiss (Dkt. 29) ("Hr'g Tr.") 26-28, 31-32 (plaintiffs' counsel arguing that any time a stockholder's counsel transmits a demand letter to the company or company counsel, it should trigger tolling because it shows diligence and effort).

[75] *See* Pls.' Answering Br. 20-22; *see also* Defs.' Reply Br. 3-7. Plaintiffs' counsel described his email as being sent to "investor relations." Defs.' Ex. EE; *see also* Hr'g Tr. 11. The email address used appears to be that of Axsome's Chief Operating Officer. *See* Pls.' Ex. A at 7; Defs.' Ex. EE.

outside counsel to "forward the attached 220 letter to the company."[76]  An improperly served demand belies any claim of zealous pursuit.

Equitable tolling requires a plaintiff to act with deliberate speed.  A plaintiff who improperly emails a demand, waits weeks to attempt proper service, and allows months of out-of-court negotiations to proceed without filing a Section 220 enforcement action has slept on his rights.  In any event, Wickstrom later stipulated in a confidentiality agreement that his demand was served on May 14, 2025—weeks after the statute of limitations expired.[77]  The claims are time-barred.

## B.     Prejudice

Because the plaintiffs filed their complaints after the analogous statute of limitations expired, the defendants are entitled to a presumption of prejudice.[78]  The plaintiffs can rebut this presumption by demonstrating "unusual conditions or extraordinary circumstances."[79]  They attempt to do so by pointing to the Federal Derivative Action, arguing that the defendants suffer no prejudice here because they

---

[76] Defs.' Ex. EE.

[77] Defs.' Ex. HH; *see* Defs.' Reply Br. 4.

[78] *Moelis & Co. v. W. Palm Beach Firefighters' Pension Fund*, — A.3d —, 2026 WL 184868, at *15 (Del. Jan. 20, 2026) ("Typically, after the analogous statute of limitations has run, 'defendants are entitled to repose and are exposed to prejudice as a matter of law by a suit by a late-filing plaintiff who had a fair opportunity to file within the limitations period.'" (quoting *In re Sirius XM S'holder Litig.*, 2013 WL 5411268, at *4 (Del. Ch. Sep. 27, 2013))).

[79] *Id.* at *16 (quoting *Levey v. Brownstone Asset Mgmt., LP*, 76 A.3d 764, 770 (Del. 2013)); *see IAC/InterActiveCorp. v. O'Brien*, 26 A.3d 174, 178 (Del. 2011).

are litigating identical claims in New York that may be dismissed and refiled in Delaware.[80]

This argument is self-defeating. Defending a second, untimely suit while navigating parallel litigation compounds the prejudice to Axsome and its fiduciaries.

Nor do the plaintiffs' arguments establish extraordinary circumstances under Delaware law. As the Delaware Supreme Court recently reiterated, an ongoing proceeding in another jurisdiction may constitute an extraordinary circumstance if it "prevented the plaintiff from bringing suit within the limitations period."[81] The Federal Derivative Action—regardless of the propriety of its venue—presented no such obstacle. The plaintiffs here were never prevented from suing in Delaware; they chose instead to sit on the sidelines for several years.[82] They have failed to rebut the presumption of prejudice, and their claims are barred by laches.

---

[80] Pls.' Answering Br. 25-26; *see supra* note 28 and accompanying text.

[81] *Moelis*, 2026 WL 184868, at *16.

[82] The plaintiffs' corollary argument—that the defendants' agreement to stay the Federal Derivative Action pending the resolution of the Securities Action amounts to "gamesmanship"—is equally meritless. Pls.' Answering Br. 26. A routine agreement to stay a related derivative suit pending the resolution of an underlying securities action is not an extraordinary circumstance that bars a valid laches defense.

## III. CONCLUSION

Because the Complaint is time-barred, the defendants' motion to dismiss under Rule 12(b)(6) is granted. This action is dismissed with prejudice as to the named plaintiffs.